## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ | ) | |
| EDUARDO QUEZADA-MARTINEZ, | ) | |
|  | ) | |
| Petitioner, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 23-cv-12503-MJJ |
|  | ) | |
| ANTONE MONIZ, SUPERINTENDENT | ) | |
| PLYMOUTH COUNTY CORRECTIONAL | ) | |
| FACILITY, | ) | |
|  | ) | |
| Respondent. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION AND ORDER

March 8, 2024

JOUN, D.J.

Petitioner Eduardo Quezada-Martinez ("Mr. Quezada-Martinez") has been in custody at the Plymouth County Correctional Facility in Plymouth, Massachusetts, for an approximate eleven months. Contending unlawful detention, Mr. Quezada-Martinez petitions this Court under 28 U.S.C. § 2241 and the Due Process Clause of the Fifth Amendment for either immediate release or an individualized bond hearing. For the reasons stated below, this Court GRANTS Mr. Quezada-Martinez's petition and orders a bond hearing before an immigration judge within fifteen days of the issuance of this Order.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Mr. Quezada-Martinez is a born citizen of Mexico. [Doc. No. 1 at ¶ 20]. On or about September 29, 2013, Mr. Quezada-Martinez was first apprehended by U.S. Border Patrol after entering the United States unlawfully. [*Id*. at ¶ 31; Doc. No. 9-1 at ¶ 8]. He was removed to

Mexico on October 1, 2013. [Doc. No. 9-1 at ¶ 10]. On October 10, 2013, Mr. Quezada-Martinez was again apprehended by U.S. Border Patrol for unlawful reentry. [*Id*. at ¶ 11]. He was removed the next day. [*Id*. at ¶ 13]. On November 26, 2014, Mr. Quezada-Martinez was apprehended for the third time, and again removed the next day. [*Id*. at ¶¶ 14-15]. At no point during these three removals did Mr. Quezada-Martinez claim a fear of returning to Mexico. [*Id*. at ¶¶ 9, 12, 14].

On April 2, 2023, Mr. Quezada-Martinez was apprehended a fourth time by U.S. Border Patrol. [Doc. No. 1 at ¶ 41]. At that time, Mr. Quezada-Martinez claimed a fear of returning to Mexico, causing his case to be referred to an immigration judge (the "IJ") for withholding proceedings pursuant to the Immigration and Nationality Act (the "INA") and the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (the "CAT"). [*Id*. at ¶ 43]. Since his arrest, Mr. Quezada-Martinez has been detained at Plymouth County Correctional Facility. [Doc. No. 1 at ¶ 42].

In four hearings between May 30, 2023, and July 7, 2023, Mr. Quezada-Martinez appeared *pro se* before the IJ. [Doc. No. 1-2 at 14-15]. During the final hearing on July 7, the IJ denied Mr. Quezada-Martinez's asylum application and ordered him removed to Mexico. [*Id*. at 15-17; Doc. No. 1 at ¶ 47]. With the help of counsel, Mr. Quezada-Martinez filed a prompt notice of appeal to the Board of Immigration Appeals (the "BIA") and fully briefed his argument by September 25, 2023. [Doc. No. 1 at ¶¶ 48-49; Doc. No. 9-1 at ¶ 30].

On August 1, 2023, Mr. Quezada-Martinez received a "Notice to Alien of Interview to Review Custody Status." [Doc. No. 51]. On September 19, 2023, Mr. Quezada-Martinez was interviewed by two officers from U.S. Immigrations and Customs Enforcement ("ICE") to determine his custody status in the pendency of his BIA appeal. [Doc. No. 1 at ¶¶ 52-53]. During the interview, Mr. Quezada-Martinez requested release from custody, arguing that he was neither

a flight risk nor danger and was likely not to be removed in the foreseeable future. [*Id.* at ¶ 57]. On October 5, 2023, ICE issued a decision denying Mr. Quezada-Martinez's request for release and continued his custody. [*Id.* at ¶ 59].

On October 24, 2023, after almost seven months in custody, Mr. Quezada-Martinez petitioned this Court for release. [*Id.*]. On November 2, 2023, ICE filed a Motion to Expedite Petitioner's Appeal. [Doc. No. 9-1 at ¶ 35]. On November 9, 2023, the government filed an opposition to Mr. Quezada-Martinez's petition, arguing Mr. Quezada-Martinez's detention is authorized by statute and does not offend the Constitution. [Doc. No. 9]. On December 7, 2023, Mr. Quezada-Martinez filed a reply. [Doc. No. 13].

On February 7, 2024, the BIA issued an opinion reversing the IJ's decision. The BIA determined that Mr. Quezada-Martinez had suffered past persecution on account of political opinion and remanded the case to the IJ to further consider Mr. Quezada Martinez's application for protection under the CAT. [Doc. No. 17]. On February 15, 2024, the Department of Homeland Security ("DHS") filed a Motion to Reconsider BIA's determination that Mr. Quezada-Martinez had suffered past persecution on account of political opinion. [Doc. No. 18]. Following the Motion's adjudication, Mr. Quezada-Martinez's case is expected to be remanded to the IJ for further proceedings. [*Id.*].

## II.  DISCUSSION

Mr. Quezada-Martinez argues his habeas petition on both statutory and constitutional grounds. He contends that his detention is unlawful under 8 U.S.C. § 1231(a)(6) because this provision only authorizes the custody of individuals deemed to be a danger to the community or a flight risk. Mr. Quezada-Martinez also argues he has been subject to prolonged detention and that due process entitles him to a neutral decisionmaker to review his continued custody. Mr.

Quezada-Martinez seeks relief in the form of his immediate release or, in the alternative, the opportunity for an individualized bond hearing.

A.  Mr. Quezada-Martinez's Detention Under 8 U.S.C. § 1231(a)(6)

"The Immigration and Nationality Act (INA) establishes procedures for removing aliens living unlawfully in the United States." *Johnson v. Guzman-Chavez*, 141 S. Ct. 2271, 2280 (2021). Upon an order of removal, the INA requires a non-citizen to be removed within 90 days, during which detention is mandatory. *Id.* at 2281. An extension to this detention period under this provision is permissible if the non-citizen "is (1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order."[1] *Id.* (citing 8 U.S.C. § 1231(a)(6)).

8 U.S.C. § 1231(a)(6) clearly governs Mr. Quezada-Martinez's detention. The Supreme Court has maintained that this statute applies to previously removed non-citizens who subsequently reenter the United States and apply for asylum based on a fear that they would be persecuted or tortured if returned to their countries of origin. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022); *Guzman-Chavez*, 141 S. Ct. at 2277. Here, Mr. Quezada-Martinez had already been removed to Mexico on three previous instances when he was apprehended by Border Patrol on April 2, 2023. Upon the reinstatement of his removal order, his detention has continued until now only because his asylum application is pending in Immigration Court. Therefore, this Court turns to § 1231(a)(6) to determine the lawfulness of Mr. Quezada-Martinez's custody.

---

[1] 8 U.S.C. § 1231(a)(6) provides, "An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period."

Contrary to his contention, § 1231(a)(6) provides that any non-citizen may be detained beyond the 90-day removal period if he is inadmissible to the United States pursuant to 8 U.S.C. §1182. Turning to the referenced provision, this Court finds that Mr. Quezada-Martinez clearly falls within the definition set forth by §1182(a)(9)(c).[2] Mr. Quezada-Martinez was thrice ordered removed between 2013 and 2014 before reentering the United States, leading to his apprehension and present detainment. Thus, as a non-citizen "inadmissible under section 1182," Mr. Quezada-Martinez's detention is authorized by § 1231(a)(6). Such a finding comports with the text of the statute as well as with recent Supreme Court precedent. *See Arteaga-Martinez*, 596 U.S. at 574 (distinguishing § 1231(a)(6) detention conditions from those of § 1226(a), which include a determination of flight risk and dangerousness).

### B. Continued Detention Without an Individualized Bond Hearing is Unreasonable Under *Zadvydas*

However, our inquiry does not end there. The Supreme Court has held that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In *Zadvydas*, the Supreme Court considered the reasonableness of a non-citizen's custody under § 1231(a)(6)—the very statute under which Mr. Quezada-Martinez is now detained. Interpreting the relevant provisions, the Court held that the presumptive limit of reasonable detention of a non-citizen is six months, after which, "once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. As the Court stated, "the statute [8 U.S.C. § 1231(a)(6)], read in light

---

[2] 8 U.S.C. §1182(a)(9)(c) provides, "An alien who has been ordered removed under section 1225(b)(1) of this title, section 1229a of this title, or any other provision of law, and who enters or attempts to reenter the United States without being admitted is inadmissible."

of the Constitution's demands, limits an alien's post-removal period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689.

Here, Mr. Quezada-Martinez's detention has been detained since April 2, 2023, a little over eleven months. His detention has already surpassed the six-month period set forth in *Zadvydas*. Therefore, the reasonableness of continuing Mr. Quezada-Martinez's custody turns on whether he has made a showing that there is no significant likelihood of removal in the reasonably foreseeable future.

This Court finds that Mr. Quezada-Martinez has made such a showing. Significantly, four months after Mr. Quezada-Martinez made his appeal, the BIA reversed the IJ's determination that Mr. Quezada-Martinez did not suffer past persecution. [Doc. No. 17]. The BIA also requested the IJ further consider Mr. Quezada Martinez's application for protection under the CAT. [*Id.*] The BIA initially remanded Mr. Quezada-Martinez's case to the IJ; however, the Government filed a Motion to Reconsider pertaining to part of the remand decision. [Doc. No. 18]. Both parties agree Mr. Quezada-Martinez's case is expected to be remanded to the IJ for further proceedings regardless of the outcome of the BIA appeal. [*Id.*]. If Mr. Quezada-Martinez's application is denied a second time, he may once again appeal the decision to the BIA. Given these facts, Mr. Quezada-Martinez has made a showing that there is no significant likelihood he will be removed in the reasonably foreseeable future. All the while, Mr. Quezada-Martinez remains detained at the Plymouth County Correctional Facility. *See Zadvydas*, 533 U.S. at 690 (detention under § 1231(a)(6) is "civil, not criminal" and is assumed to be "nonpunitive in purpose and effect").

The Government argues Mr. Quezada-Martinez's eleven-month detention cannot be unreasonable under *Zadvydas*, as ICE has successfully removed Mr. Quezada-Martinez to

Mexico on three prior occasions and will do so again once his asylum application is denied. [Doc. No. 9 at 14]. Therefore, the Government claims, Mr. Quezada-Martinez's removal remains reasonably foreseeable because his detention is not indefinite or potentially permanent. [*Id*. at 15].

      The Government's argument is unpersuasive. The facts in Mr. Quezada-Martinez's case have changed meaningfully since the Government filed its opposition. The Government cites a Sixth Circuit case to support its claim that a non-citizen's detention "remained constitutional while his withholding-only proceedings progressed . . . because if he 'does not prevail in his pending actions before this court and the BIA, nothing should impede the government from removing him.'" [*Id*. at 13] (quoting *Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020)). However, in light of the BIA's decision to remand Mr. Quezada-Martinez's case, the Government can no longer rely on the Sixth Circuit's reasoning in *Larose* to justify his continued detention. Mr. Quezada-Martinez's removal does not hinge only on a single pending action before the BIA, but rather on the outcome of several lengthy remand and appeal proceedings as laid out above. Indeed, the Sixth Circuit stated explicitly in *Larose* that, "[i]f [the petitioner] *does* prevail before this court or the BIA, he may . . . argue at that point that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* (emphasis added). Thus, the bare fact that the Government may be able to secure Mr. Quezada-Martinez's removal at some remote point in the future is insufficient, without more, to rebut the showing that there is no significant likelihood of removal in the reasonably foreseeable future.

      Finally, Mr. Quezada-Martinez argues he is entitled to an impartial decisionmaker as to the reasons for his ongoing detention and asks the Court to apply the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to find that ICE's procedures do not provide sufficient

safeguards as to his procedural due process rights. [Doc. No. 1, 13]. Because this Court has determined that Mr. Quezada-Martinez is entitled to a bond hearing under the *Zadvydas* standard, it need not reach his procedural due process claim.

## C.   CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas is <u>GRANTED</u>. The Petitioner is entitled to an individualized bond hearing before an immigration judge within fifteen days of the issuance of this Order.


SO ORDERED.

<u>/s/ Myong J. Joun</u>
United States District Judge